ZACK WHEAT, APPELLANT, v. W. E. ALDERSON AND OTHERS, RESPONDENTS.—130 S. W. (2d) 650.

Kansas City Court of Appeals. June 19, 1939.

*Preble Hall, Thomas C. Swanson, Michael E. Crogan* and *Sloane Turgeon* for appellant.

*Cowgill & Popham* and *Guy W. Green, Jr.,* for respondents.

CAMPBELL, C.—Plaintiff, while driving an automobile in Kansas City, Missouri, was struck and injured by an automobile operated by W. E. Alderson, named as one of the defendants, but who does not appear to have been summoned in the action nor to have appeared therein. The petition charged that the automobile Alderson was driving was owned by him or by his codefendants and was being used "in connection with the auto dealer business of Sight Bros. Company;" that defendants conspired together to cause or permit the automobile Alderson was driving to be operated in violation of law in that title to said automobile had not been transferred to Alderson; "and more particularly was such conspiracy such that said automobile was then owned by the defendant Sight Bros., and we being used by said Alderson as a part and parcel of such conspiracy to operate such automobile in Missouri without legal licenses thereon and without legal right, and the defendants and each and all of them agreed and conspired to violate the laws of Missouri when such operation could not be lawful and as a result thereon the said defendants Sight Bros. as named herein, became and are legally liable for the negligence of the said Alderson and co-conspirator herein."

The jury at the close of plaintiff's evidence under the peremptory instruction of the court returned a verdict for the defendants. From the judgment on the verdict plaintiff has appealed. The defendant David Sight was plaintiff's witness. He testified on direct examination that on April 11, 1936, the Sight Bros. Motor Co. delivered possession of the automobile Alderson was driving at the time of the collision to the latter and received as a part of the purchase price a used Chevrolet sedan car; that he did not know what license tags

were on the automobile delivered to Alderson nor did the Sight Bros. have information or evidence that Alderson had applied for registration or title certificate for the new automobile; that the transaction with Alderson was handled in the "usual way;" that when a customer trades in a used car with license tags on it for a new car he usually takes the tags from the old car and puts them on the new one "and registers them with the State;" that he did not know whether or not Alderson took the tags off the old car and put them on the new car; that at the time Alderson obtained the new car he filled in a standard blank form of application for a certificate of title and signed the dealers certificate which was a part of the application, and that he did not know whether Alderson forwarded the application to the secretary of State; that Alderson did not have license plates belonging to Sight Brothers Motor Co. nor did he make a deposit guaranteeing the return of any license plates belonging to that company.

It was agreed that if Alderson were present he would testify that at the time of the accident he was using the license plates which he had used on the old car. It was conceded the collision was due to the negligence of Alderson. The plaintiff contends that Sight Brothers Motor Company in selling the new automobile to Alderson failed to comply with the provisions of Section 7774, Revised Statutes 1929; that operating the new automobile on the highways was an unlawful act; that Alderson and his codefendant acted in concert, were co-conspirators and each liable for the wrongful conduct of the other.

The charge of conspiracy was no part of the statement of the cause of action; it was a mere convenient method of charging that defendants were jointly and severally liable for the acts of each of them. [Seegers v. Marx & Haas Clothing Company et al., 66 S. W. (2d) 526.]

Assuming without deciding that the dealer in selling the automobile failed to comply with the provision of section 7774, *supra*, we, nevertheless, hold plaintiff failed to make a case against any defendant that appeared in the cause.

It must be borne in mind that this action is predicated on the negligence of Alderson; that his codefendants are sought to be held on the sole ground that they failed to comply with the statute relating to the sale of automobiles; that there is neither pleading nor proof that Alderson was not a competent driver. In such circumstances there was no causal connection between the negligence of Alderson and the acts of his codefendants in disposing of the automobile. [Frigge v. Brooks, 72 S. W. (2d) 995.]

The plaintiff cites and relies upon the case of Woolridge v. Scott County Milling Co., 102 S. W. (2d) 958. The facts stated by the court follow:

"As to the evidence there is no controversy as to the time and place of the injury; the accident happened while the truck, which was

owned by Sturgeon and driven by Wade, was on its way back to Oran after delivering a nine-ton load of merchandise for the Milling Company. The truck driver at the time of the injury had in his possession several of appellants receipted waybills, signed by merchants to whom the driver had delivered merchandise for the appellant, and the driver of the truck also had $174 in cash collected on C. O. D. shipments which he was to deliver to the appellant on his return to its Oran office.

"Defendant F. L. Sturgeon testified that he had no trucker's permit, and that he had told M. Bowman, the manager of appellant, that it was not lawful for him to haul appellant's products without a permit, and that Bowman said for him to send the trucks on down and take out the feed, and that he hauled many loads for the appellant thereafter. Sturgeon further testified that Bowman agreed to get him out of trouble if he were arrested or stopped by a patrolman, and that Bowman did get him out of trouble at one time when he was arrested.

"Bowman testified that he hired Sturgeon to haul the products of the mill to places where he wanted them delivered, and that his truck had hauled the products many times over the lapse of two or three years. He said that Sturgeon hauled for 7½ cents per 100 pounds for the first 100 miles, and 15 cents per hundred thereafter. He also said that he made out the invoices and the C. O. D. bills that Wade had in his possession with the cash collected thereon at the time of the injury. He said that the reason he employed Sturgeon and his trucks to haul these products was because he got it hauled cheaper than he could get it hauled by railroad or by common carrier trucks."

Under the facts in that case the appellant was clearly liable for the negligence of the driver of the truck for the reason the owner of the truck and the appellant had agreed the truck would be operated on the highways of Missouri in violation of law and for the benefit of the appellant; and the owner of the truck had been employed by the appellant to do the very work in which the former was engaged at the time of the accident.

Manifestly there are no such facts in the case at bar. Holding as we do that no case was made for the jury, other questions presented in the briefs need no attention.

The parties tried the cause and presented it here as though Alderson was not named as a defendant; and we have ruled the case on the same theory. The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.