### MOFFETT v. COMMERCE TRUST CO. et al.

### No. 4581.

United States District Court
W. D. Missouri, W. D.

Nov. 30, 1949.

439

Martin J. O'Donnell, Kansas City, Mo., for plaintiff.

James E. Goodrich, Eugene E. Bowers, Hugh M. Miller, Philip J. Close, Kansas City, Mo., for Commerce Trust Company, defendant.

Orlin A. Weede, R. Carter Tucker and Walter A. Raymond, Kansas City, Mo., for defendant Helen Weede.

Orlin A. Weede, Kansas City, Mo., pro se.

B. C. Howard, Kansas City, Mo., pro se.

William Dennis Bush, Kansas City, Mo., for defendants B. C. Howard and William H. Kopp.

No service upon and no appearance by defendant R. E. Copman.

REEVES, Chief Judge.

Pursuant to the opinion in the above case, D.C., 75 F.Supp. 303, and the order dismissing plaintiff's First Amended Complaint in accordance with said opinion, the plaintiff was granted leave to file and has filed her Second Amended Complaint. The several defendants have filed motions to dismiss on various grounds, including the one that the Second Amended Complaint bears such similarity to the complaint dismissed as to bring said Second Amended Complaint under the ban of the opinion and order above mentioned.

An examination of the Second Amended Complaint fully sustains the defendants in their contention. However, there are other matters that should be discussed before a ruling is finally made on the several motions to dismiss. The Second Amended Complaint covers 26 pages of typewritten matter. In substance it is alleged that the defendants entered into a conspiracy to deprive the plaintiff and others of rights, privileges and immunities secured to them by the United States Constitution and laws, and actually committed the wrongs for which the conspiracy was formed, and that by reason thereof said defendants became liable to the plaintiff and to others for such wrongs and consequent damages, perforce sections 43, 47 and 48, Title 8 U.S.C.A., now much condensed in new section 1343, Title 28 U.S.C.A., relating to the subject of civil rights.

The new section substantially embodies most of the provisions mentioned by the plaintiff in her complaint, viz., sections 41, 42, 43, 47 and 48. In effect, these sections, or the current section creates causes of action and prescribes procedure for vindication in the national courts (original jurisdiction having been conferred by another section) for a suitor, "(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, *by any act done in furtherance of any conspiracy mentioned* (emphasis mine) in section 47 of title 8; * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, *of any right, privilege or immunity* (emphasis mine) secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

Plaintiff asserts that she and others were the victims of a conspiracy and that such conspiracy began many years ago and is still continuing. The plaintiff has enumerated a large number of alleged overt acts on the part of the alleged conspirators which she says caused damages to her or to those under whom she claims, and, at the conclusion of her complaint, she asks an aggregate sum of money for the various and sundry damages accruing, as she claims, by reason of said large number of overt acts.

In drawing the Second Amended Complaint able counsel for plaintiff has sought to avoid the reasoning and conclusions of the opinion filed with the order dismissing the First Amended Complaint. Counsel did this by alleging that, in the several court proceedings used by the defendants for the deprivation of plaintiff's rights, the judge, in each instance, purposely and intentionally made orders and entered decrees violative of the rights of plaintiff and those under whom she claims.

These matters, with others, will be noticed and discussed in this memorandum opinion.

■ 1. In examining the various overt acts set forth in the complaint one is convinced that in each and every instance the plaintiff enjoyed the full and complete opportunity to have a fair and an unprejudiced adjudication of her rights. Undoubtedly she could have made the same proof in the several court proceedings mentioned in

her complaint that she now proposes to make in this court. Her challenge to the validity of the acts of an Acting Probate Judge in Kansas City is insufficient for the reason that public policy would validate the acts of even a pretender or a de facto public official. Moreover, the orders complained against were made in November and December, 1928.

■ If the statutes were void, as now claimed by plaintiff, a challenge to their validity could have been made in a proper court proceeding. It is to be noted that the plaintiff alleges unlawful acts on the part of two officers in Missouri, two officers in Kansas, and, apparently, unnumbered officers in Oklahoma. In addition, she says that the administrator of one of the involved estates was in fact an officer of the State of Missouri, and that, in like manner, the ancillary administrator in the State of Kansas.

In each and every instance plaintiff had her immediate remedy either through the courts of Kansas, Missouri, or Oklahoma, or, on certiorari to the Supreme Court of the United States. By her averments she indicates that certiorari was denied because she had not tendered a federal question. If discrimination and oppression were made and practiced upon the plaintiff, unquestionably the Supreme Court of the United States would have taken cognizance of the facts if the same had been presented.

In a portion of plaintiff's voluminous complaint she alleges coercion and duress. These averments are not made as being pursuant to a conspiracy, but as acts of the individual defendants which she says amounted to coercion and duress, and that she yielded to a course of action involuntarily.

■ Again, the courts were then open to the plaintiff to have secured a vindication of her rights and a redress of her grievance. The purport of plaintiff's complaint is to seek from the federal courts a policing of the state courts. In one part of her complaint, in referring to one of the judges in Kansas, she used this language, "that he willfully, intentionally and purposefully discriminated against Thomas S. Moffett and

plaintiff." These are characteristic averments and are followed by statement of facts which amount to no more than that the judge had decided the case against the plaintiff. She has many cases still pending in the courts of Missouri, Kansas and probably Oklahoma. It would seem that, in pending cases, the plaintiff can obtain all of the relief she seeks here. Practically all of the matters complained against by plaintiff occurred more than 20 years ago. To entertain this complaint would be to condemn judges and other public officers of three great states as being delinquent in the performance of their duties.

■ 2. As pointed out in the opinion heretofore filed and cited above, the statutory enactments relied upon by the plaintiff comprehend state, and not individual, action. It was the object of these enactments to bring about the proper enforcement of the 13th and 14th Amendments to the Constitution of the United States. It was for this reason, doubtless, that plaintiff's counsel, on each alleged overt act, endeavored to involve state officials, namely, judges, in the wrongdoing. The averments, however, were insufficient for the purpose.

■ In an important case, such as this, involving public officials, the averments of the complaint, as in cases of fraud, should not be mere conclusions of the pleader, but must state facts from which the conclusion is inevitably drawn that the state official did, in fact, use his office for the sole object or purpose of depriving the plaintiff of her constitutional rights. This is the rule for the reason that the law presumes the regularity of duty and the good faith of a public officer and it must appear from the averments of facts that he has departed from an upright and proper course of conduct.

■ All the averments of the complaint show that the challenged acts or decisions were done or rendered in the regular course of judicial procedure, after due process. All of this is confirmed from an inspection of a veritable mass of exhibits, disclosing that from authentic records the plaintiff not only enjoyed the right of appeal, but in practically all, if not all, the cases she did appeal from the alleged oppressive acts or

rulings, and such acts or rulings were vindicated by affirmance in most of the cases, though some of the cases are still pending

Nearly all of the so-called overt acts were done in the regular course of judicial proceedings, and the damages, if any, only accrued at the end of lawsuits. The statutes invoked are and were designed to remedy wrongs committed and damages accruing to the victim at the beginning, and which was usually the end, of the legal proceedings. The case of Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240 is a fair example. The case at bar in every way differs in its facts from those contemplated by the statutes relied upon by plaintiff in the matter of proper averments, such was the holding in Snowden v. Hughes, 321 U.S. 1, loc. cit. 5, 7, 8, 10 and 11, 64 S.Ct. 397, 88 L.Ed. 497; Seegers v. Marx & Haas Clothing Co., 334 Mo. 632, 66 S.W.2d 526; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838; Bomar v. Bogart, 2 Cir., 159 F.2d 338.

The Supreme Court in Snowden v. Hughes, supra, epitomized the law at page 10 of the opinion in 321 U.S., at page 402 of 64 S.Ct., as follows: "The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the opprobrious epithets 'willful' and 'malicious' * * *." And, again, 321 U.S. at page 11, 64 S.Ct. at page 403: "But the necessity of a showing of purposeful discrimination is no less in a case involving political rights than in any other." And, of course, as said by Mr. Justice Frankfurter, in his concurring opinion, 321 U.S. loc. cit. 16, 64 S.Ct. loc. cit. 405: "But to constitute such unjust discrimination the action must be that of the state." No one, of course, questions this rule, as this concisely expresses the reason for the decision made by this court on the motion to dismiss the First Amended Complaint. Clearly the Second Amended Complaint does not contain averments so as to bring the case within the provisions of the statute relied upon. Moreover, an examination of the entire complaint shows that it is wholly and entirely directed at individual conduct and only remotely involves state officials, and

it is obvious from reading the complaint that these averments were placed there in order to bring the case within the statutes relied upon. The case of Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240 does not change this viewpoint.

3. As indicated in my former opinion, a civil action for a conspiracy is in tort and the gist of the action is the civil wrong resulting in damages. 15 C.J.S., Conspiracy, § 21, page 1031.

There exists no civil action for a conspiracy, and particularly is this true in the national courts. An action may lie for damages suffered by reason of torts committed pursuant to a conspiracy but no action for damages lies for the conspiracy alone. Sidney Morris & Co. v. National Ass'n of Stationers, 7 Cir., 40 F.2d 620, 624. "The gist of such actions is not * * * the conspiracy, but it is the damages for which the wrongdoer and all who conspire with him are liable." Id.; Ransom v. Dollar S. S. Line et al., D.C., 2 F.Supp. 409; Shaltupsky v. Brown Shoe Co., 350 Mo. 831, 168 S.W.2d 1083; Kansas City v. Rathford et al., 353 Mo. 1130, 186 S.W.2d 570; Wooldridge et al. v. Scott County Milling Co. et al., Mo.App., 102 S.W.2d 958; Scavenger Service Corporation v. Courtney, 7 Cir., 85 F.2d 825.

It is of little moment, therefore, whether the conspiracy continues to the present time or whether it has long since dissolved and the participants have abandoned their alleged objective. Moreover, the complaint, being one for an alleged conspiracy, states a cause of action not cognizable under the statutes mentioned. A conspiracy under these statutes is only remotely mentioned as forming the basis of a suit for damages, if, in furtherance of such conspiracy, damages have accrued to the complainant. It being doubtful as to the court's jurisdiction, the motion of the defendants for a summary judgment should not be entertained.

4. As indicated in the former opinion in this case, the plaintiff bases her right of action upon an alleged conspiracy and the overt acts which she says occasioned damages. No cause of action exists apart from

national statutes. To decide the case properly requires an examination of the statute which creates the cause of action.

█ As heretofore stated, new section 1343, Title 28 U. S. C. A. specifically provides for the exercise of the jurisdiction of the federal courts in such cases and the *proper procedure in cases of suits.* Said section not only acknowledges jurisdiction, but, as heretofore stated, authorizes the recovery of damages "for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, *by any act done in furtherance of any conspiracy mentioned in section 47 of Title 8."* (Emphasis mine.) The meaning of this enactment is very clear; it creates a cause of action "for injury," etc., "in furtherance of any conspiracy." Obviously, as stated in the prior opinion, each wrong creates a separate and distinct cause of action, if damage actually accrues.

Able counsel call attention to section 49a, Title 8 U.S.C.A. This section undertakes to supply any deficiency in statutory law in respect of civil rights and says in relation to the section relied upon as follows: " * * * and for their vindication, (that is, civil rights) shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; * *." It is sufficient to say that the law with respect to the causes of action created under the civil rights code is clear and understandable and would not evoke the use of the common law. For each wrong perpetrated by conspirators under the statute the person claiming to be wronged has a cause of action.

█ 5. An examination of the authorities does not reveal that such actions are barred by limitations, except under one section not necessary to mention here. In the case of O'Sullivan v. Felix, 194 F. 88, the Court of Appeals, for the Fifth Circuit, said in reference to a similar action: "We find no federal statute of limitations applicable to the case." This case was affirmed by the Supreme Court, 233 U.S. 318,

34 S.Ct. 596, 58 L.Ed. 980. This is unfortunate for the reason that where a state or states are accused of oppressive discrimination, as in this case, there should be a speedy and prompt presentation of the facts as a matter of quasi public concern. The public should have the opportunity to recall or punish public officials who have used their offices to practice discrimination and favoritism among their fellow citizens. The accused officials, as well as the states, should have an opportunity, while the facts are recent and familiar, either for condemnation or vindication and no reason appears in this case why there should have been a delay on some of the complaints for more than a score of years. A court should view with suspicion and distrust a case so long delayed where the accusations are so serious and even momentous.

█ 6. In this case, if otherwise the complaint states a cause of action, a multitude of separate and distinct causes of action are commingled in one count. Ordinarily this could be readily overcome by granting to the plaintiff leave to file an amended complaint, but, in view of the ruling in the first paragraph of this opinion, it seems so clear that the plaintiff cannot state a cause of action as to warrant the court in a dismissal. And such order should be made with prejudice against filing another complaint. This is so for the reason that this case has been pending here a long time, and plaintiff was granted an opportunity to comply with a similar ruling when the First Amended Complaint was dismissed. Where so broad and an almost universal challenge is made to the integrity and good faith of so many and diverse public officials judicial credulity is severely taxed.

It will now be a simple matter for counsel, if dissatisfied with this opinion and order, to have the Court of Appeals say whether, in its judgment, a cause of action is stated or could be stated. This obviates the necessity of a hearing on defendants' motions for a summary judgment authorized at this stage of the pleadings by paragraph (b) of Rule 12, Federal Rules of Civil Procedure, as amended, 28 U.S.C.A.